☑ Original

**CLERK'S OFFICE**
**A TRUE COPY**
Apr 28, 2022
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| Two (2) cellular phones associated with Brown | ) |
| County Drug Task Force case no. 22-152; | ) |
| (Fully described in Attachment A) | ) |

Case No.  **22-M-443 (SCD)**
**Matter No.: 2022R00080**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   5-12-22   *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries   .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:      4-28-22 10:30 am

*Judge's signature*

City and state:      Milwaukee, WI      Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

1.     The property to be searched are two (2) cellular phones associated with

Brown County Drug Task Force case no. 22-152 which can be further described as;

       a.  Black Samsung Cellphone (IMEI: 350207637146959, MODEL: SMS124DL, **TARGET DEVICE 1),** located at the Brown County Drug Task Force, Green Bay, WI

       b.  Black Samsung cellphone (IMEI: 3501216795881, **TARGET DEVICE 2**) with a black flip case, located at the Brown County Drug Task Force, Green Bay, WI

**ATTACHMENT B**
**Particular Things to be Seized**

1.      All records on cellular phone related to violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy) including:

   a.  lists of contacts with any identifying information;

   b.  photographs, videos, or other media storage connected to drugs and firearms;

   c.  types, amounts, and prices of drugs and firearms purchased/sold;

   d.  any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   e.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.      Any and all financial records connected to the purchase/sale of firearms or drugs;

3.      Documentation establishing the identity of the individuals in control of the residences;

4.      Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

2

5. Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6. Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7. All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

8. Lists of firearm and drug customers and related identifying information;

9. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10. Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently

3

called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

13.    Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

14.    Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15.    Records evidencing the use of the Internet Protocol address, including:

a.  records of Internet Protocol addresses used;

b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Apr 28, 2022
s/ Michael Longley
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Two (2) cellular phones associated with Brown County )
Drug Task Force case no. 22-152; (Fully described in )
Attachment A) )

Case No. **22-M-443 (SCD)**

**Matter No.: 2022R00080**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(g)(1); | Felon in possession of a firearm; possession of a stolen firearm. |
| 18 U.S.C. 922(j) | |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Sean A. Carlson, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date: 4-28-22

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, Black Samsung Cellphone (IMEI: 350207637146959, MODEL: SMS124DL, **TARGET DEVICE 1),** located at the Brown County Drug Task Force, Green Bay, WI and a Black Samsung cellphone (IMEI: 3501216795881, **TARGET DEVICE 2**) with a black flip case, located at the Brown County Drug Task Force, Green Bay, WI, and the extraction of evidence described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

3.      As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have

obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

4.     Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

5.     I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

6.     Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

7. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

8. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

9. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

10. There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively: 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy).

3

11.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

12.     The property to be searched are two (2) cellular phones associated with Brown County Drug Task Force case no. 22-152 which can be further described as;

   a. Black Samsung Cellphone (IMEI: 350207637146959, MODEL: SMS124DL, **TARGET DEVICE 1)**, located at the Brown County Drug Task Force, Green Bay, WI

   b. Black Samsung cellphone (IMEI: 3501216795881, **TARGET DEVICE 2**) with a black flip case, located at the Brown County Drug Task Force, Green Bay, WI

13.     The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

## PROBABLE CAUSE

14.     On February 1, 2022, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Special Agent (SA) Sean Carlson and Brown County Sheriff's Officer (Ofc.) Al Wysocki debriefed ATF Confidential Informant no. 30939 (CI 30939). CI 30939 stated to investigators a black male known to them by the nickname "BUMP" or "BUMPY" was selling large amounts of firearms utilizing Facebook messenger. CI explained they are contacted on a near weekly basis by "BUMPY" with new firearms that are available to

4

purchase. CI 30939 stated he/she has known "BUMPY" for approximately four (4) years and has purchased firearms from him in the past. CI 30939 provided investigators with the Facebook account "BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377)," which BUMPY JOHNSON uses to communicate for all his potential firearms dealings.

15. CI 30939 stated BUMPY acquires his firearms from an unknown Mexican male who drives a burnt orange Dodge Charger sedan and operates near a Mexican grocery store in Green Bay, Wisconsin. CI 30939 further explained the unknown Mexican male gets the firearms from a source in Minnesota who steals them from trains. CI 30939 explained the firearms are usually in pristine unused condition, still inside the manufacturer's packaging.

16. It should be noted, CI 30939 is providing information to law enforcement in hopes to garner judicial consideration for a pending Wisconsin charge of possession with intent to distribute Fentanyl. CI 30939 has previously been convicted of Armed Robbery, possession of THC, possession of a stolen vehicle (three times), and possession of a controlled substance (two times). Investigators believe the information provided by CI 30939 to be truthful and credible based on Facebook photos from private conversations CI 30939 has provided to investigators that has been able to be corroborated. Additionally, CI 30939 has previously provided narcotics related information to Brown County Sheriff's Officer Al Wysocki that he was able to corroborate through separate investigation. Also, CI 30939 is actively cooperating with

law enforcement and was part of a February 2022 recorded controlled buy of a firearm where Jeremy JOHNSON was the target.

17.     Prior to this meeting with CI 30939, Ofc. Wysocki had previously identified "BUMPY JOHNSON" as Jeremy Roman JOHNSON (B/M, DOB XX/XX/1991). JOHNSON was identified via a booking photograph. It should be noted, a search of JOHNSON's criminal history reveals he is a convicted felon, having prior state convictions for Robbery (2009) and Burglary (2009).

18.     On February 9, 2022, ATF, SA Sean Carlson and SA Luke Barker interviewed CI 30939.  CI 30939 again stated Jeremy Roman JOHNSON (aka BUMPY JOHNSON) had contacted them in the past few days, utilizing Facebook messenger (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377).  CI 30939 stated JOHNSON was offering to sell two (2) Ruger pistols (unknown model and caliber) with silencers.  CI 30939 provided SA Carlson the following screenshot of one of the Ruger pistols:



6

19.     CI 30939 stated to investigators, in addition to the two (2) aforementioned Ruger pistols, JOHNSON had previously contacted them when he was selling a Glock pistol (unknown model and caliber), a Springfield Armory XD pistol (unknown model and caliber) with an extended magazine, and a Ruger PC Charger pistol (unknown caliber) with a drum magazine. CI 30939 stated JOHNSON advertised all of these firearms utilizing the same aforementioned Facebook messenger account.

20.     CI 30939 stated JOHNSON contacted them about a Taurus pistol (unknown model and caliber) in approximately January 2022, and he was asking $650 for the pistol.

21.     CI 30939 stated JOHNSON contacted them about the aforementioned Springfield Armory XD pistol in approximately December 2021, and he was asking $800 for the pistol. CI 30939 provided the following photograph of the pistol, which JOHNSON sent through Facebook Messenger:

7



22.     CI 30939 stated JOHNSON contacted them about the aforementioned Glock pistol in approximately December 2021, and he was asking $650 for the pistol.  CI 30939 provided the following photograph of the Glock pistol, sent by JOHNSON utilizing Facebook Messenger:



23.     CI 30939 stated JOHNSON also recently sold a multi-colored Ruger PC Charger pistol (unknown caliber) and CI 30939 stated they took the following photograph of the pistol when it was in JOHNSON's possession:



24.     During the interview with CI 30939, they received an incoming Apple Facetime call from JOHNSON.  Immediately after this call, CI 30939 placed a recorded cell phone call to JOHNSON at the number 920-883-2878.  During the call, JOHNSON stated to CI 30939 that the two (2) aforementioned Ruger pistols, with silencers, were no longer for sale because JOHNSON decided to keep them both for himself.  CI 30939 asked JOHNSON to let them know when he had more firearms for sale, and the call ended.

25.     On February 9, 2022, SA Carlson viewed the Wisconsin Department of Motor Vehicles photograph on file for JOHNSON and compared it to publicly visible

9

photographs for the Facebook account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377). SA Carlson determined the person depicted in photographs contained within the account appear to match the DMV photograph of JOHNSON, leading SA Carlson to believe JOHNSON was the person in control of the Facebook Account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377).

26.     On February 26, 2022, CI 30939 contacted Brown County Sheriff's Officer Al Wysocki stating that JOHNSON messaged them through Facebook Messenger, utilizing the account BUMPY JOHNSON (Facebook Username BUMPY JOHNSON, Facebook ID 100042803601377) offering to sell three AK-47 firearms. CI 30939 provided investigators with a video which depicted a heavily tattooed left hand and arm picking up three different AK-47 firearms. One firearm depicted in the video was an AK-47 pistol with large round "drum" high-capacity magazine. One firearm was an AK-47 pistol with a standard magazine. The final firearm was an AK-47 rifle with full length barrel. JOHNSON stated to CI 30939 that only the full-length rifle and pistol with drum magazine were available for purchase. JOHNSON stated the third firearm depicted in the video was not for sale because the source intended to keep it for himself. JOHNSON stated the cost of the firearms were $1,600 for the rifle and $3,000 for the AK-47 pistol with drum magazine. CI 30939 stated the arm in the video belonged to a previously unidentified Hispanic male, who allegedly supplies JOHNSON his firearms.

27.     Your affiant and Ofc. Wysocki directed CI 30939 to arrange to purchase

10

the firearms from JOHNSON and the unknown Hispanic male on February 28, 2022.

28.     On February 28, 2022, CI 30939 placed a recorded phone call to JOHNSON at the phone number 920-883-2878, in the presence of investigators.  JOHNSON stated he would call the source to determine if he still had the firearms for sale and where they would meet.  JOHNSON could be overheard calling the source on speakerphone from a separate unknown phone.  The source stated he would sell the two (2) previously discussed AK-47 firearms at a Planet Fitness, located at 1640 W. Mason Street, Green Bay, Wisconsin.

29.     Immediately following the recorded phone call, surveillance units set up in the area of the target location.  CI 30939 drove to the area of the deal and placed a recorded phone call to JOHNSON as CI 30939 arrived at the location.  CI 30939 parked his vehicle, and JOHNSON, who was driving a gold Chevrolet Malibu (bearing Wisconsin plate no. AMT8495), parked next to the CI vehicle.  Investigators observed JOHNSON exit the gold Malibu and get into the CI vehicle.  A short time later, investigators observed a burnt orange Dodge Charger (bearing Wisconsin plate no. 496ZKX) arrive and park directly to the right of the aforementioned gold Chevrolet Malibu.  CI 30939 provided JOHNSON the cash for the firearms, and JOHNSON exited the CI vehicle and got into the Dodge Charger.  Investigators observed the driver of the Dodge Charger was a heavy-set Hispanic male.  A short time later, investigators observed the Dodge Charger back out of the parking spot, then JOHNSON exited the vehicle holding what appeared to be a black rifle case and a plastic grocery bag.  The

11

Dodge Charger drove away, and JOHNSON put the rifle case and plastic grocery bag into the CI's vehicle. CI 30939 then drove out of the area and met investigators at a nearby location to turn over the evidence. The black rifle case contained the two (2) firearms, which were as depicted in the video provided by JOHNSON prior to the deal. The plastic grocery bag contained three (3) standard AK-47 magazines and one (1) AK-47 "drum" style magazine which holds approximately fifty (50) rounds of 7.62 caliber ammunition.

30.     The firearms purchased are more particularly described as a Roman Arms pistol (Model Micro Draco, 7.62 caliber, bearing serial no. PMD 27270), and a Roman Arms Rifle (Model WASR-10, 7.62 caliber, bearing serial no. A1-33420-15).

31.     On March 1, 2022, SA Carlson conducted a search of Wisconsin DMV records and determined the aforementioned 2011 Dodge Charger (bearing Wisconsin plate no. 496ZKX) is registered to Elias RUIZ (H/M, DOB 11/22/1979) at 2214 Imperial Lane, Apt. 3, Green Bay, Wisconsin 54302.

32.     On that same date, SA Carlson showed SA Kurtzweil and SA Hankins a DMV photograph of Elias RUIZ, with identifying information removed  and both positively identified RUIZ as the driver of the aforementioned Dodge Charger.

33.     On March 17, 2022, CI 30939 contacted Ofc. Wysocki. CI 30939 stated that JOHNSON contacted him/her and stated RUIZ was selling two (2) Glock pistols (unknown model and caliber) which had been modified with auto sears which convert the pistols into machine guns.  Ofc. Wysocki directed CI 30939 to attempt to purchase

the converted pistols.

34.     On March 18, 2022, CI 30939 contacted Ofc. Wysocki and stated JOHNSON told him/her RUIZ returned to town the day prior. JOHNSON stated instead of selling the converted automatic Glock pistols, both RUIZ and JOHNSON each decided to keep one pistol. JOHNSON stated to CI 30939 that since it is spring and the weather is warmer, "pistols are going to sell fast." JOHNSON stated he would let CI 30939 know when he had more firearms for sale.

35.     On April 18, 2022, JOHNSON was arrested by the Brown County Sheriff's Department (BCSD) following a traffic stop in which he was the only occupant of the vehicle. During the stop, Ofc. Mason explained to JOHNSON he would be conducting a search of JOHNSON's vehicle based on positive alert on the vehicle from his narcotics canine partner. In response to this, JOHNSON replied "I smell like weed." Ofc. P. Giesler conducted a search of JOHNSON's person and located a black Samsung cellphone (IMEI: 3501216795881, **TARGET DEVICE 2**) with a black flip case, in JOHNSON's left pants pocket. JOHNSON stated to Ofc. Giesler that the phone in his pocket belonged to him. Additionally, Ofc. Giesler felt what seemed like a hard rock substance being concealed in JOHNSON's groin area. During a strip search of JOHNSON's person during booking, officers located approximately 27.29 gram of a white chunky substance, which field tested positive for cocaine base. During the search of the vehicle, Ofc. Mason located a Springfield pistol (model XD 9, 9mm, bearing serial no. US835119) loaded with an extended drum style magazine that contained 24 rounds

13

of ammunition.  In addition to the firearm, Ofc. Mason also located, inside the vehicle, $557 in US currency, a black Samsung Cellphone, (IMEI: 350207637146959, MODEL: SMS124DL, **TARGET DEVICE 1**) a drug scale, and an additional five (5) rounds of loose ammunition located inside a backpack.  Additionally officers observed but did not seize the following items inside the vehicle and backpack; multiple unused sandwich baggies, two (2) non operational cellular phones, "blunt" wrappers, and work ID cards and bank documents belonging to JOHNSON.  BCSD officers queried the serial number of the firearm and determined it had been reported stolen from Kentucky.

36.     Following the arrest, during GBPD's routine booking procedure, officers placed both **TARGET DEVICE 1** and **TARGET DEVICE 2** on inventory, stored securely inside the Brown County Drug Task Force evidence vault, located in Green Bay, Wisconsin where they remained as of the date of this warrant.

37.     Based on a review of JOHNSON's criminal history, JOHNSON has previously been convicted of Robbery (2009) and Burglary (2009), which are felonies, in violation of Wisconsin Statute. He is, therefore, prohibited from possessing firearms and ammunition, pursuant to 18 U.S.C. § 922(g)(1).

38.     Your Affiant is aware, through training and experience, that evidence of illegal firearm purchase, possession, and/or sales is commonly found within cellphones. Your Affiant is further aware that illegal firearms possessors often take, or cause to be taken, photographs, video, and other visual depictions of themselves, their associates, firearms straw purchasers, their property, and typically keep and maintain

14

these photographs, video, and other visual depictions in cellphones located on their person or in areas where they have exercised dominion and control. Specifically, in this case, the **TARGET DEVICE 1** and **TARGET DEVICE 2** was located in a vehicle and on the person of the felon suspect and with illegally possessed firearms. Your Affiant believes **TARGET DEVICE 1** and **TARGET DEVICE 2** could contain, among other evidentiary items, cellphone call records, contacts, location data, social media connections, and photographs.

39.     Your Affiant knows that subjects involved in crimes with other subjects often need to use the cellphones to coordinate the crime. Your Affiant knows that subjects who traffick firearms and illegally possess firearms often use their cellphones to take pictures of the firearms and also to take pictures of themselves with the firearms. Your Affiant is aware those who are prohibited from legally purchasing/possessing firearms must obtain firearms through other means, often times through a straw purchaser. A straw purchase can be described as the event where someone who can legally purchase/possess a firearm purchases a firearm on behalf of someone else. This is done in an effort to conceal the true identity of the intended recipient. Affiant is aware this is a commonly utilized technique by those previously convicted of felonies who seek to obtain firearms.

40.     Based upon affiant's investigation, training and experience, affiant believes probable cause exists to believe that Wilson committed violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm) and possessed

the aforementioned Springfield pistol (model XD 9, 9mm, bearing serial no. US835119) on April 18, 2022.

41. Your Affiant believes additional information relevant to the investigation involving violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy) is housed within the aforementioned cellular devices.

42. Your Affiant is aware that cellphones can be used to store information including text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, video and other data.

43. Similarly, your affiant is aware that many cellphones contain a list of contacts and associate names, and cellphone numbers and other identifying information. Your Affiant asks that this information be included in the search warrant, as it will assist in identifying the user/owner of the cellphone, individuals with whom the user had contact, and may provide evidence of the source of any guns involved in this investigation.

44. Your Affiant is also requesting an authorized search of cellphone devices to include all removable drives, cards, memory devices or similar devices attached to or contained within said cellphone. Your Affiant is aware that cellphones frequently contain SD cards or other removable memory/storage devices upon which data, including photographs, videos, and other information, may be stored.

16

45.    Your Affiant is aware that many cellphones capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the alleged illegal actions occurred. Similarly, said information may assist law enforcement with locating and identifying other subjects with whom the target was involved in related to narcotics trafficking, including by identifying the place or places where said illegal possession of firearms and/or narcotics may have occurred.

## TECHNICAL TERMS

46.    Based on my training and experience, I use the following technical terms to convey the following meanings:

47.    Wireless cellphone:    A wireless cellphone (or mobile cellphone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals.    These cellphone send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone.   A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone.   In addition to enabling voice communications, wireless cellphone offer a broad range of capabilities.   These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other

information on personal calendars; and accessing and downloading information from the Internet.  Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

48.    Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

49.    IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

50.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the

18

Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

51.     Based on my training, experience, and research, I know that these cellphone devices have capabilities that allow them to serve as a wireless cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

52.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

53.     There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

> a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when

a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet

20

directory or "cache."

54. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to

22

establish that a particular thing is not present on a storage medium.

55. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

56. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

23

## ATTACHMENT A
**Property to Be Searched**

1.      The property to be searched are two (2) cellular phones associated with

Brown County Drug Task Force case no. 22-152 which can be further described as;

   a.  Black Samsung Cellphone (IMEI: 350207637146959, MODEL:
       SMS124DL, **TARGET DEVICE 1),** located at the Brown County
       Drug Task Force, Green Bay, WI

   b.  Black Samsung cellphone (IMEI: 3501216795881, **TARGET
       DEVICE 2**) with a black flip case, located at the Brown County
       Drug Task Force, Green Bay, WI

## ATTACHMENT B
## Particular Things to be Seized

1.    All records on cellular phone related to violations of 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922 (a)(6), lying and buying, 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy) including:

    a.   lists of contacts with any identifying information;

    b.   photographs, videos, or other media storage connected to drugs and firearms;

    c.   types, amounts, and prices of drugs and firearms purchased/sold;

    d.   any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    e.   all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.    Any and all financial records connected to the purchase/sale of firearms or drugs;

3.    Documentation establishing the identity of the individuals in control of the residences;

4.    Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

2

5. Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6. Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7. All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

8. Lists of firearm and drug customers and related identifying information;

9. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10. Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently

3

called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

13.     Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

14.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15.     Records evidencing the use of the Internet Protocol address, including:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4